IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 2, 2016

**IN RE: BRAXTON R.**

**Direct Appeal from the Juvenile Court for White County**
**No. JV 886      Sammie E. Benningfield, Jr., Judge**

**No. M2016-00602-COA-R3-PT – Filed September 2, 2016**

This appeal involves the termination of a father's parental rights to his nearly three-year-old child.  In 2014, the child was adjudicated dependent and neglected due to his parents' substance abuse, including the fact that the child was born with illegal drugs and non-prescribed medication in his system.  In 2015, the Tennessee Department of Children's Services filed a petition seeking to terminate the father's parental rights on the statutory grounds of abandonment and severe child abuse.  The juvenile court found that the grounds of abandonment and severe child abuse were proved by clear and convincing evidence and also found by clear and convincing evidence that termination of father's rights was in the child's best interests.  The father appeals.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed**
**and Remanded**

BRANDON O. GIBSON, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and JOHN W. MCCLARTY, J., joined.

Michael J. Rocco, Sparta, Tennessee, for the appellant, Darrel R.

Herbert H. Slatery III, Attorney General and Reporter, and Kathryn A. Baker, Assistant Attorney General, Nashville, Tennessee, for the appellee, Tennessee Department of Children's Services

## OPINION

### Background and Procedure

Braxton R.[1] ("the Child") was born out-of-wedlock to Darrel R.[2] ("Father") and Cassandra J. ("Mother") in November 2013. The Child was placed in the custody of the Tennessee Department of Children's Services ("The Department") due to dependency and neglect on November 15, 2013, and was adjudicated to be dependent and neglected on February 27, 2014. In its adjudicatory order, the juvenile court found that Mother presented to the emergency room "because she was hurting and denied knowing she was pregnant. She had no prenatal care. Her urine drug screen upon admission was positive for amphetamine, methamphetamine, opiates, marijuana, and oxycodone." The court also found that the Child tested positive for marijuana, opiates, amphetamine, and methamphetamine. Both Father and Mother admitted to using illegal drugs, including marijuana and methamphetamine. Mother stated that she had used methamphetamine about eight times during the pregnancy and that she always used with Father. Father stated that he snorted methamphetamine with Mother the day before the Child was born. Father also admitted to providing Mother with hydrocodone prescribed to Father's grandmother. Based on those facts, the court found that the Child was the victim of severe child abuse perpetrated by Father and Mother and also found by clear and convincing evidence that the Child was dependent and neglected. The juvenile court ultimately determined that the Child should remain in foster care and ordered Father to pay child support in the amount of $215.00 per month.

Father was arrested for DUI and violating probation in February 2015. In lieu of going to jail, Father elected to enter a year-long, faith-based rehabilitation facility in North Carolina. Mother voluntarily surrendered all parental rights to the Child on April 13, 2015. The Department filed a petition to terminate Father's parental rights on September 11, 2015, alleging that Father willfully abandoned the Child by failing to visit or support the Child and that Father committed severe child abuse by giving Mother illegal drugs while she was pregnant with the Child. The petition also alleged that terminating Father's parental rights was in the Child's best interests. The juvenile court heard testimony in this matter from the family services worker assigned to the Child's

---

[1]In cases involving a minor child, it is this Court's policy to redact names in order to protect the child's identity. In this case, in order to preserve both clarity and the anonymity of the child, we will redact the names of individuals sharing the child's surname and will refer to those individuals by their given name and the first letter of their surname.

[2]In its order, the juvenile court found that although there have been no paternity legitimation proceedings concerning the Child, Mother has not identified anyone other than Father as the Child's father, and Father held himself out as the father of the Child at the commencement of these proceedings. No one other than Father has made a claim that he believes he is the Child's father.

case, the Child's foster mother, and from Father on February 19, 2016.

Crystal Taylor ("Taylor"), the family services worker assigned to the Child's case, testified generally about her involvement with the case and the relationship between Father and the Child. Taylor noted that Child remained continuously in foster care since the adjudication of dependency and neglect on February 27, 2014. Between then and the filing of the petition, Father did not make any child support payments or visit the Child, including in the four months preceding the filing of the petition. Father first made a partial child support payment in December 2015, after the petition had been filed. Similarly, Father's first visit with the Child did not occur until January 27, 2016. According to Taylor, Father was aware of his duty to visit the Child and even had the ability to schedule visits while in the rehabilitation facility but failed to do so. With respect to the January 27, 2015 visit, Taylor noted that the visit went well and that Father behaved appropriately with the Child. The Child was friendly towards Father and allowed Father to hold him. However, Taylor opined that she did not believe that a meaningful relationship had been established between Father and the Child, and she did not believe Father showed any genuine interest in the Child's welfare until after the petition had been filed.

The juvenile court next heard from the Child's foster mother, who testified that the Child lived with her since he came home from the hospital. Although the Child initially exhibited some difficulty learning to crawl and walk, by the time of trial the Child was doing "really well," according to the foster mother. She also noted that the Child is "a part of [her] family," that she feels like the Child is her own and that she loves the Child "very much." The Child refers to the foster mother as "momma." According to the foster mother, Father did not provide any support for the child, including items like diapers or gifts. The foster mother also expressed her intention to adopt the Child if he became available for adoption.

The juvenile court also heard testimony from Father, who was discharged after successfully completing his rehabilitation program just days before the hearing. Father described the program as a "discipleship program" that "teaches you how to put your life into God's hands." After being charged with DUI and violating probation, Father said he was given the choice to "stay in jail and just go back out on the streets and just keep doing the same thing, or go get help." Father testified that he was originally placed on probation following a conviction for domestic assault against his seven year-old daughter.

While in the program, Father's ability to visit or contact the Child was limited. Father described a pass system in which he would earn three passes, for eight hours, twelve hours, and twenty-four hours, respectively, over the course of the twelve-month program. Additionally, Father had the ability to use a phone twice per week for fifteen

minutes. Father never attempted to use his phone time to contact or check on the Child, nor did he write any letters to the Child. Father used his eight and twelve hour passes to go to church and to Pigeon Forge, Tennessee. When asked why he did not attempt to visit the Child with those passes, Father explained that the round trip between North Carolina and where the Child lived would take roughly eleven hours. Father admitted that he did not look into whether the Child could be brought to North Carolina for a visit. Father received his third pass, for twenty-four hours, after the filing of the petition and used that pass to visit with the Child on January 27, 2016. According to Father, he had no ability to earn money while in the program until December 2015, when he began working as an "intern" while still in the program and earned roughly $100 per week. Father stated that he used that money to buy snacks and food for the other members of the program with whom he shared living quarters. With respect to his visit with the Child, Father shared that the two played together with toys. When asked whether he knew anything about the Child, Father stated "I've only seen him once, except when he was born." Father also admitted to never having provided anything for the Child.

Father also testified about his ability to earn a living and provide for a home for the Child. At the time of the hearing, Father was living in a mortgage-free home purchased by his grandparents and had just started a new job working at a sporting goods store where he earned $11.25 per hour. He stated that his plan for the future was to "work, pay bills, just live normal."

The juvenile court entered the final decree of guardianship on February 22, 2016. In its decree, the court found that Father had willfully failed to support the Child "for the entire time [the Child] was in custody except for some partial payments which the Court finds to be token support." The court also found that Father willfully failed to visit the Child until after the petition had been filed. With respect to both willful failure to support and to visit, the court found that "if a reviewing court later determines that [Father] was incarcerated during the four months prior to the filing of the petition because he was in a rehabilitation facility pursuant to a court order . . . ," that Father failed to support and to visit in the four months preceding that incarceration. The court additionally found that Father committed severe child abuse against the Child by giving Mother illegal drugs while she was pregnant with the Child.

In determining whether the Child's best interests would be served by terminating Father's parental rights, the court found that Father had "not visited the [C]hild at all since November 15, 2013 until after the petition to terminate was filed" and that no meaningful relationship had been established between the Child and Father. The court found that Father had not consistently paid child support and had not paid a reasonable portion of the Child's substitute physical care and maintenance when financially able to do so. Further, the court found that Father "has shown little or no genuine interest in the

4

welfare" of the Child and that the Child was placed with foster parents who established a strong bond with the Child. Based on each of those findings, the juvenile court ultimately found that the Department had proven by clear and convincing evidence that grounds existed for termination of Father's parental rights and that termination of those rights was in the Child's best interests. Father appealed.

**Issue**

Father raises the following issue on appeal:

I.      Whether the trial court erred in finding that terminating Father's parental rights to the Child was in the Child's best interests.

**Standard of Review**

"A biological parent's right to the care and custody of his or her child is among the oldest of the judicially recognized liberty interests protected by the due process clauses of the federal and state constitutions." *In re J.C.D.*, 254 S.W.3d 432, 437 (Tenn. Ct. App. 2007); *In re Audrey S.*, 182 S.W.3d 838, 860 (Tenn. Ct. App. 2005). Although the parent's right is fundamental and superior to the claims of other persons and the government, it is not absolute. *In re J.C.D.*, 254 S.W.3d at 437. A parent's right "continues without interruption only as long as a parent has not relinquished it, abandoned it, or engaged in conduct requiring its limitation or termination." *Id.*; *see also In re M.J.B.*, 140 S.W.3d 643, 653 (Tenn. Ct. App. 2004).

In Tennessee, proceedings to terminate parental rights are governed by statute. "Parties who have standing to seek the termination of a biological parent's parental rights must prove two things." *In re Audrey S.*, 182 S.W.3d at 860; *see also In re M.J.B.*, 140 S.W.3d at 653. "First, they must prove the existence of at least one of the statutory grounds for termination," which are listed in Tennessee Code Annotated section 36-1-113(g). *Id.* Several grounds for termination are listed in subsection (g), but the existence of any one of the grounds enumerated in the statute will support a decision to terminate parental rights. *In re Angela E.*, 303 S.W.3d 240, 251 (Tenn. 2010); *In re S.R.C.*, 156 S.W.3d 26, 28 (Tenn. Ct. App. 2004); *In re J.J.C.*, 148 S.W.3d 919, 925 (Tenn. Ct. App. 2004). Second, the petitioner must prove that terminating parental rights is in the child's best interest, considering, among other things, the factors listed in Tennessee Code Annotated section 36-1-113(i). *In re Audrey S.*, 182 S.W.3d at 860. "In light of the constitutional dimension of the rights at stake in a termination proceeding, . . . the person[] seeking to terminate these rights must prove all [the] elements of the case by clear and convincing evidence." *In re Bernard T.*, 319 S.W.3d 586, 596 (Tenn. 2010) (citing Tenn. Code Ann. § 36-1-113(c); *In re Adoption of A.M.H.*, 215 S.W.3d 793, 808-

5

09 (Tenn. 2007); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002)). In sum, in order to terminate parental rights, a trial court must determine by clear and convincing evidence not only the existence of at least one of the statutory grounds for termination but also that termination is in the child's best interest. *In re Adoption of Angela E.*, 402 S.W.3d 636, 639 (Tenn. 2013); *In re F.R.R., III*, 193 S.W.3d 528, 530 (Tenn. 2006). "Clear and convincing evidence" has been defined as "evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *In re Adoption of Angela E.*, 402 S.W.3d at 640 (quoting *In re Valentine*, 79 S.W.3d 532, 546 (Tenn. 2002) (quoting *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). It produces a firm belief or conviction in the fact-finder's mind regarding the truth of the facts sought to be established. *In re Audrey S.*, 182 S.W.3d at 861.

Because of this heightened burden of proof in parental termination cases, on appeal we must adapt our customary standard of review as set forth in Tennessee Rule of Appellate Procedure 13(d). *In re Audrey S.*, 182 S.W.3d at 861. First, we review each of the trial court's specific factual findings *de novo* in accordance with Rule 13(d), presuming the finding to be correct unless the evidence preponderates against it. *In re Adoption of Angela E.*, 402 S.W.3d at 639. Second, we must determine whether the facts (either as found by the trial court or as supported by the preponderance of the evidence) amount to clear and convincing evidence that one of the statutory grounds for termination exists. *Id.* at 639-40. "Whether a statutory ground has been prove[n] by the requisite standard of evidence is a question of law to be reviewed *de novo* with no presumption of correctness." *In re R.L.F.*, 278 S.W.3d 305, 312 (Tenn. Ct. App. 2008) (citing *In re B.T.*, No. M2007-01607-COA-R3-PT, 2008 WL 276012, at *2 (Tenn. Ct. App. Jan. 31, 2008)).

## Analysis

### A.    Statutory Grounds for Termination of Parental Rights[3]

*1. Abandonment Generally*

The Department first alleged abandonment by willful failure to visit and willful failure to support pursuant to Tennessee Code Annotated section 36-1-113(g)(1). In pertinent part, Tennessee Code Annotated section 36-1-113(g) provides:

> (g) Initiation of termination of parental or guardianship rights may be based
> upon any of the grounds listed in this subsection (g). The following

---

[3]Father did not raise this issue on appeal. However, "in an appeal from an order terminating parental rights the Court of Appeals must review the trial court's findings as to each ground for termination . . . regardless of whether the parent challenges these findings on appeal." *In re Carrington H.*, 483 S.W.3d 507, 525-26 (Tenn. 2016).

grounds are cumulative and non-exclusive, so that listing conditions, acts or omissions in one ground does not prevent them from coming within another ground:

(1) Abandonment by the parent or guardian, as defined in 36-1-102, has occurred;

Tenn. Code Ann. § 36-1-113(g)(1). Tennessee Code Annotated section 36-1-102 defines "abandonment," in relevant part, as follows:

(1)(A) For purposes of terminating the parental or guardian rights of a parent or parents or a guardian or guardians of a child to that child in order to make that child available for adoption, "abandonment" means that:

(i) For a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent or parents or guardian or guardians of the child who is the subject of the petition for termination of parental rights or adoption, that the parent or parents or the guardian or guardians either have willfully failed to visit or have willfully failed to support or have willfully failed to make reasonable payments toward the support of the child;

. . . .

(iv) A parent or guardian is incarcerated at the time of the institution of an action or proceeding to declare a child to be an abandoned child, or the parent or guardian has been incarcerated during all or part of the four (4) months immediately preceding the institution of such action or proceeding, and either has willfully failed to visit or has willfully failed to support or has willfully failed to make reasonable payments toward the support of the child for four (4) consecutive months immediately preceding such parent's or guardian's incarceration, or the parent or guardian has engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child[.]

Tenn. Code Ann. § 36-1-102(A)(i) and (iv).

In order for a court to terminate a parent's parental rights on the ground of abandonment, that abandonment must be willful. *In re Audrey S.*, 182 S.W.3d at 862-63 (Tenn. Ct. App. 2005). "Failure to visit or support a child is 'willful' when a person is aware of his or her duty to visit or support, has the capacity to do so, makes no attempt to

do so, and has no justifiable excuse for not doing so." *Id.* at 864 (citing *In re M.J.B.*, 140 S.W.3d at 654).

"Whether a parent failed to visit or support a child is a question of fact. Whether a parent's failure to visit or support constitutes willful abandonment, however, is a question of law." *In re Adoption of Angela E.*, 402 S.W.3d at 640 (citing *In re Adoption of A.M.H.*, 215 S.W.3d at 810). As previously discussed, this Court reviews "questions of law de novo with no presumption of correctness." *Id.*

## 2. *The Requisite Four Month Period*

In addition to finding that Father willfully failed to visit and to support the Child during the four months preceding the filing of the petition for termination, the juvenile court alternatively found that if Father's court-ordered rehabilitation program constituted incarceration, that Father willfully failed to visit and support the Child during the four months preceding his incarceration. Our review of the record, including the transcript of the final hearing, indicates that Father was given a choice between jail or rehabilitation. If Father had not chosen to enter the program in North Carolina, he would have remained in jail. While in the program, Father's freedom was extremely limited. He could not leave the program, except on short term passes which he earned over a number of months, nor could he use a phone except for two fifteen-minute periods per week.

In similar situations, this Court has treated court-ordered, full-time rehabilitation programs as incarceration for the purposes of determining which four month period should be analyzed with respect to the ground of abandonment. *See In re Destiny M.*, No. W2013-01802-COA-R3-PT, 2014 WL 712545 at *1 (Tenn. Ct. App. Feb. 24, 2014) ("Consequently, Mother was incarcerated, either in jail or in court-ordered rehabilitation from July 7, 2012 through the date of the hearing, May 15, 2013); *see also In re Kayden H.*, No. E2014-02360-COA-R3-PT, 2015 WL 3876365 at *5 (Tenn. Ct. App. June 23, 2015) (*no perm. app. filed*). We also conclude that Father was, in fact, incarcerated during the four months preceding the filing of the petition for termination and therefore look to whether Father willfully abandoned the Child during the four months prior to his incarceration.

## 3. *Abandonment by Willful Failure to Visit*

We begin by examining the trial court's finding that Father abandoned the Child by willfully failing to visit. In its written findings, the court stated that

> [Father] willfully failed to visit [the Child] for the entire time that the child
> was in custody except for one visit on January 27, 2016. Before the visit on

8

January 27, 2016, [Father] had not visited the child since November 15, 2013. [Father] was aware of his duty to visit the child. [Father] knew the child was in foster care and knew how to schedule visits. [Father] has made no attempt to visit the child since November 15, 2013 and has provided no justifiable excuse for failing to visit the child. [Father] has failed to visit the child in the four months prior to the filing of the petition. However, if a reviewing court later determines that [Father] was incarcerated during the four months prior to the filing of the petition because he was in a rehabilitation facility pursuant to a court order, the Court finds that in the four months preceding his incarceration [Father] failed to visit the child.

The record, including the testimony offered at the final hearing, clearly supports the juvenile court's findings with respect to this ground. Father himself testified that he had only seen the Child once since the Child was born, and that visit occurred well after the petition had been filed. Discerning no error, we affirm the juvenile court's finding with respect to the ground of abandonment by willful failure to visit.

*4. Abandonment by Willful Failure to Support*

We next examine the juvenile court's finding that Father abandoned the Child by willfully failing to support the Child. In its written findings, the court stated that

[Father] willfully failed to support [the Child] for the entire time this child was in custody except for some partial payments which the Court finds to be token support . . . . [Father] is able bodied and capable of working and supporting the child. [Father] was aware of his duty to support the child. [Father] had made no attempt to support the child and has provided no justifiable excuse for failing to support the child. The Court finds that [Father] has failed to support the child in the four months preceding the filing of the petition. However, if a reviewing court later determines that [Father] was incarcerated during the four months prior to the filing of the petition because he was in a rehabilitation facility pursuant to a court order, the Court finds that in the four months preceding his incarceration [Father] failed to support the child.

As with the ground of willful failure to visit, the record, including the testimony offered at the final hearing, clearly supports the juvenile court's findings with respect to this ground. Despite being ordered to do so in February 2014, Father never paid any child support until December 2015, several months after the filing of the petition for termination. Additionally, the Child's foster mother testified that Father never

9

contributed to the support and maintenance of the Child, nor did the Father ever send any gifts to the Child. Discerning no error, we affirm the juvenile court's finding with respect to the ground of abandonment by willful failure to support.

*5. Severe Child Abuse*

The record reflects that the Juvenile Court of White County, Tennessee adjudicated the Child to be dependent and neglected after finding, by clear and convincing evidence, that the Child was a victim of severe child abuse, as defined in Tennessee Code Annotated section 37-1-102. The record also reflects that the juvenile court found that Father, along with Mother, perpetrated said severe child abuse through the supply and use of illegal drugs and non-prescribed pain medication. The juvenile court's order of dependency and neglect is final and was not appealed. Therefore, grounds for termination exist pursuant to Tennessee Code Annotated Section 36-1-113(g)(4).

## B. Best Interests of the Child

Having determined that the statutory grounds for termination of Father's parental rights exist, we now analyze whether the juvenile court erred in finding that termination was in the Child's best interests. *In re Adoption of Angela E.*, 402 S.W.3d at 639; *In re F.R.R., III*, 193 W.W.3d at 530. Tennessee Code Annotated section 36-1-113(i) provides a list of factors that are relevant when deciding what is in a child's best interest. However, the list is not exhaustive. In addition, "the statute does not require the court to find the existence of every factor before concluding that termination is in a child's best interest." *In re Arteria H.*, 326 S.W.3d 167, 182 (Tenn. Ct. App. 2010). "The best interest of a child must be determined from the child's perspective and not the parent's." *Id.* (citing *White v. Moody*, 171 S.W.3d 187, 194 (Tenn. Ct. App. 2004)). "[W]hen the interests of the parent and the child conflict, courts are to resolve the conflict in favor of the rights and best interest of the child." *In re Jacobe M.J.*, 434 S.W.3d 565, 573 (Tenn. Ct. App. 2013) (citing Tenn. Code Ann. § 36-1-101(d)).

Here, the juvenile court made the following findings of fact with regard to the Child's best interests:

23. [Father] has not maintained regular visitation or other contact with the child. [Father] has not visited the child at all since November 15, 2013 until after the petition to terminate was filed and then only visited once after the filing of the petition[.]

24. A meaningful relationship has not otherwise been established

10

between the child and [Father].

25. [Father] has not paid child support consistently with the child support guidelines promulgated by the Department pursuant to Tenn. Code Ann. § 36-5-101.

26. [Father] has not paid a reasonable portion of the child's substitute physical care and maintenance when financially able to do so.

27. [Father] has shown little or no genuine interest in the welfare of the child.

28. The child is placed in a foster home that wishes to adopt the child.

29. The child has established a strong bond with the foster parents.

The court then concluded that the Department had proven "by clear and convincing evidence that it is in the best interest of the child that all the parental rights of [Father] to said child be forever terminated[.]"

On appeal, Father argues that the juvenile court erred in finding that termination of Father's parental rights was in the Child's best interests based on statements made by the court during the final hearing. According to Father, the juvenile court's ruling with respect to the Child's best interests "focused mostly" on the Child's continuous placement with his foster family and that family's desire to adopt the Child. More specifically, Father alleges that the juvenile court examined only two criteria regarding best interest: "(a) continuity/permanency, and (b) potential for relapse." However, Father's assertion is not supported by the juvenile court's findings as stated in the final order. As previously stated, the juvenile court made a number of findings in support of the termination of Father's parental rights being in the Child's best interests. From our review of the record, the statutory best interest factors weigh in favor of terminating Father's parental rights. Father did not maintain regular visitation with the Child nor did he provide support of any kind prior to his incarceration. Moreover, Father did not show any genuine interest in the Child's well-being until after the filing of the petition. For these reasons, we affirm the juvenile court's finding that termination of Father's parental rights is in the Child's best interests.

**Conclusion**

For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this

11

appeal are taxed to the Appellant, Darrell R.  Because Darrell R. is proceeding *in forma pauperis* in this appeal, execution may issue for costs if necessary.

_____

BRANDON O. GIBSON, JUDGE